Administration Mr. Hancock? Please the court, I'm Jack Hancock and along with Bill Buechner and Ali Sabzavari, Larry Wiggins and John O'Neill who represent some of the cities in the school system individually and if the court would allow me, I'd like to give special thanks and well and to acknowledge Miss Irene Howey who is a member of the D.C. Circuit who has assisted us in representation of these parties as well. It's our pleasure to be here on behalf of our clients, Your Honor, to argue this case before you. The decision of the FAA to change their prior interpretation of the policy relative to revenue diversion at airports and to apply that policy to petitioners is arbitrary and capricious. It's an abuse of discretion and it's contrary to the law. This result... Seems to me we don't have a final order here. Your Honor, both the November letter from counsel as well as the letter to Representative Scott supported by the letter to Representative Scott from the administrator indicate that there is a final decision on the part of the FAA as to the applicability of that interpretation to these parties. We're talking... Aren't we talking about the letter that stated November 17th of 2016? Yes, sir. The one that says toward the end, the foregoing response represents the present view of the FAA's Office of Chief Counsel based on facts presented in your September 13th, 2016 letter to the administrator. In your opinion, this advisory response does not constitute a final agency action order issued by the Secretary of Transportation under 49 U.S.C. sections 46.1.1.0, right? That is correct, Your Honor. Following that, we have a letter from the administrator, from the FAA administrator to Representative Scott in which he indicates that it is a final decision. And the parties, the petitioners, therefore, are put into a position where they are potentially, based upon the statement that they are covered by this, subjected to significant risk of treble damages if this applies to them. And that is the risk that we place ourselves in. The FAA has... or that we find ourselves in. The FAA has argued that we get to raise these issues in an enforcement proceeding. That's clearly not the law. in which we're in jeopardy of serious penalties. And it's very clear, Your Honor, that the issue that is created by the FAA's reliance on the limited language of the code section without reading the entire public law. If you look at the public law, section 802 of 104-264, Congress said that Congress finds that section 47.107 of Title 49 United States Code prohibits the diversion of certain revenue generated by a public airport that is a condition of receiving a project grant. It ties the reception of a project grant to the revenue diversion issue, which clearly makes sense. So paragraph two says a grant recipient that uses... a grant recipient that uses airport revenue for purposes that are not airport related in a manner inconsistent with chapter 471 of Title 49 illegally diverts airport revenue. That is the circumstance under which this policy and this law was intended to cover. Was the diversion of revenue from an airport by an owner-operator of that airport. That you must have those qualifications in order for this statute to make any sense at all. Well, then you would say that the statute itself doesn't make sense. No, sir. I say that the interpretation of the statute doesn't make sense. How is the interpretation of the FAA at variance with the terms of subsection A of the statute? The attempted interpretation by the FAA to apply this statute to the petitioners in this case is inconsistent because none of the petitioners in this case fit those qualifications. We're not owners, operators. We do not receive grants. Well, but that's not what A says, is it? A says that it applies to revenue diversion generated by a public airport as a condition of receiving a public grant. The receipt of the grant, the ability to receive a grant, is a prerequisite to the application of the statute. Otherwise, the results are absurd. Can you show me where in this 2016 letter there's a threat of enforcement? Just point me to the... No, sir. There's not a threat of enforcement in the 2016 letter. There is a threat of enforcement in the policy interpretation. I'm fine now. All right, sir. That's the end of the case for me. Well, Judge, I appreciate that, but let me go ahead since I have just a little bit more time and indicate to you why we think that the absurdity of the interpretation placed on the FAA, how that is created. We believe that is created because if you review the two taxes that are involved, we've got a local option sales tax that is collected pursuant to state authority by cities and counties as a result of a revenue, as a result of a referendum by those cities and counties. The state law allows for that referendum to take place. The state collects that tax. The state divides that tax and distributes it, and the state is... the spending of the tax is based upon the agreement of the parties as to how much they'll get. Most importantly with regard to that, the cities and counties are required to roll back their millage rate based upon the amount that they receive in lost revenue. It is a state statute. The school system for the East Blast, again, a constitutionally created tax adopted by a referendum for a specific purpose of capital improvement. That's the only thing that can be used for. The application or attempted application to those two taxes of the policy that is being enumerated by the FAA is illogical, it is illegal, and it's absurd because it cannot be performed. These entities cannot comply with the statute. The critical thing to notice about the policy and the application is it doesn't say you can't collect the tax. The FAA concedes that these entities can receive the tax that's collected by the state. It limits how that tax could be spent, though. That is exactly right. It only says that you have to spend it at the airport, which none of these entities have the ability to do. None of them. They cannot spend that tax at the airport. The airport's owned by the city of Atlanta. It's located almost exclusively in Clayton County. It doesn't have to be spent at the airport. It could be spent in relation to the airport's activities, right? Well, you know, that was some portion, Judge Anton, of the FAA's position as we've discussed this with them. However, they have been unable, have not produced any designation or any set-offs, as they refer to them, that any of these defendants or these petitioners can comply with. And how does a city, a consultant, call to account? Could you not take the tax revenue you've derived from this and donate it to the airport authority to build that new umbrella they're doing? Not allowed to do that? No, Your Honor. Two reasons would prohibit us from doing that. As far as the counties and cities are concerned, it would be a gratuity. Because the city of Atlanta owns the airport. They're the ones that are doing this, and they're not in Clayton County. They're not a city in Clayton County, so it would be a gratuity. As for the school system, the school system is restrained from the ability to spend that money on anything other than the capital improvement projects. Are you saying under state law you have no authority to cease collecting taxes on fuel? You have no authority to do that? No, ma'am, we do not. The county or the petitioners cannot control that. We have no ability whatsoever to control that tax being collected. The items that it applies to are established by state law. The only thing that we can do is choose whether or not we're going to impose it in our jurisdiction or not. And that's done by a referendum with regard to the loss that happens one time. The only way to stop it is a referendum is to end it. And the school system, it happens every five years. Thank you very much. Thank you, Mr. Hancock. Ms. Carson. Good morning. May it please the Court. Sonya Carson for the respondent. I think I can keep this brief. As Judge Pryor, as you observed, there's no threat of enforcement in the Chief Counsel's letter. And indeed, even in a letter that contained . . . Before we get to that, and I think that's, speaking for me, a very good argument, and that may end everything, but following up, just as a practical matter, assuming we had a final order here, what does the FAA say Clayton County is supposed to do? They say under state law they have to collect this tax, that under state law they're not allowed to give it to the airport authority. And as a practical matter, what are they to do at this juncture? So, as the FAA explained in the Chief Counsel's letter and the invitation stands today, Clayton County is free to consult with the FAA about permissible uses of the revenues that it collects, which may include, and this is discussed in the 2014 policy interpretation, providing an offset so that if there is money that they are compelled by the state to collect and prohibited by the state in spending for an aviation-related purpose, the FAA has provided a mechanism that accommodates state law that would allow the Clayton County entities to allocate other money that they would be free to use for any airport-related purpose that they might wish. They explain in their action plan, for example, that their police and fire services respond to incidents at the airport, that when people are arrested at the airport they are detained in Clayton County facilities, prosecuted in the Clayton County judicial system, any of those uses . . . What if they have a surplus even after they do all that? Well, Your Honor, it's not a strength of their argument that they might collect more money than they could possibly hope to spend for a permissible purpose. That runs directly into . . . But I'm saying that he's saying they're hamstrung because of state law, and he's saying they just put it in a bank account and nobody ever touches it. Well, Your Honor, again, the process of consultation before the FAA is ongoing, and if that is a concern that the Clayton County entities have, they were free at the time of the Chief Counsel's letter, and they remain free today to raise that issue with the FAA, and the FAA would discuss with them how to resolve it and would present, I think, ultimately that process would culminate . . . And you're saying, and to get back to what your first argument was, you're saying that's an ongoing process. At the end of that, you may come up with something they don't like, and there may be an enforcement action. There may be something that sounds like it's final, but we're nowhere near final right now. Indeed. If there were to be an enforcement action, of course, the Clayton County entities would be free to challenge that. And that would present this court with a sort of concrete, factual circumstance that petitioners themselves say their statutory interpretation depends on. They say that the FAA's statutory interpretation is wrong because of a question of fact that the FAA has not completed the process of answering, and that is sufficient to dispose of any notion that the Chief Counsel's letter is final agency action. I'm happy to address the statutory interpretation or any other question that the panel might have. Answer the question that I asked opposing counsel, whether the policy is at variance with the statute. Your Honor, it is not. And about the policy, I would note, of course, Clayton County entities are clear here that they are not challenging the FAA's 2014 policy amendment. In fact, didn't they initially agree? Initially they said, we agree with you. Then they came in later and challenged it. They agreed that they were subject to it. Am I correct that the statute really says subject to federal assistance rather than receipt of federal assistance? Yes, Your Honor. 47133A, and this is on A1 in our brief, explains that local taxes on aviation fuel or the revenues generated by an airport that is, quote, subject, federal assistance may not be expended for any purpose other than the purposes that we've discussed that are sufficiently related to the airport, the local airport system, or aviation. Thank you. Thank you. Mr. Carson. May it please the Court, Judge Pryor, if I could point out that the law is clear that what's in that November letter does not control. You have to analyze and perform the test as to whether or not it is a final policy determination rather than just taking what it says. Let me talk about the offsets. And counsel mentioned the fact that every person arrested at the airport goes to the Clayton County jail and is processed through the Clayton County judicial system at the cost of the citizens of Clayton County. That offset has been suggested and rejected. On multiple occasions, we have asked the FAA, give us offsets. Tell us what offsets apply to this circumstance. Tell us what offsets the school system and the city of Lovejoy and the city of Morrow and Lake City and Jonesboro have that would apply to the airport. Have you suggested any? Yes, sir. We've suggested ones I mentioned, but those people have none. The airport is not in their jurisdiction. They can't give the airport money. They can't give the city of Atlanta money. The county provides and maintains roads around the airport and in the area of the airport. The city of College Park is the only city in Clayton County. What is your position as to what FAA, you call it final, what is your position as to what they've told you to do? They haven't told us to do anything other than don't spend the money on an airport project. That's all they've told us. Here's what the Supreme Court of the United States says. As a general matter, two conditions must be satisfied for agency action to be final. First, the action must mark the consummation of the agency's decision-making process. It must not be of a merely tentative or interlocutory nature. Second, the action must be one by which rights or obligations have been determined or from which legal consequences will float. I don't see where you have satisfied that. Judge, if I might just point out in response to Ms. Carson's argument with regard to the enforcement, we are entitled to an answer to that question as to whether it applies to us and the ability to challenge that without the hammer of enforcement hanging over our heads. So if their letter, if they have not made a final policy decision, then maybe we file a declaratory judgment action. Moving forward, I guess we'll have to decide what to do. But if they have not made a final decision, we are entitled to notice of that final decision when it is made and the right to challenge that in a manner other than through an enforcement action. And we should not be subjected to that being our remedy. The interpretation to the extent that they do contend that it is a final determination or that you find it is a final determination, the only way to make the results not absurd is to find, as the statute says, and Judge Antone, I don't have any problem with subject to being the word. We're not subject to a grant. None of my clients could get a grant for an airport purpose. They couldn't do it. They don't have that ability. They don't own it. They don't operate it. They're not a sponsor of it. Thank you very much for your time. Thank you, Mr. Hancock. We are adjourned for this week.